179 N.J. Super. 300 (1981)
431 A.2d 859
WILLIAM MANTURI AND FRANCES MANTURI, PLAINTIFFS-APPELLANTS,
v.
V.J.V., INC., A CORPORATION, THOMAS J. VIOLA, PUBLIC SERVICE ELECTRIC & GAS CO. AND THOMAS J. BUOYE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1981.
Decided June 12, 1981.
*301 Before Judges BOTTER, KING and McELROY.
Richard M. Goldman argued the cause for appellants (Larry Bronson, attorney).
*302 Richard B. Livingston argued the cause for respondents V.J.V., Inc. and Thomas J. Viola (Braff, Litvak, Ertag, Wortmann & Harris, attorneys).
Henry L. SanGiacomo argued the cause for respondents Public Service Electric & Gas Co. and Thomas J. Buoye (William S. Smith, attorney).
The opinion of the court was delivered by McELROY, J.A.D.
This case involves a soft tissue, personal injury arising out of an automobile accident. There is a derivative per quod claim as well, but all references hereafter will be to the injured plaintiff in the singular. The complaint was filed on May 26, 1977, more than two years after the accident date of March 27, 1975. The complaint was filed by counsel other than the firm here representing plaintiff. Plaintiff contends that his filing should be viewed as timely and that he was justified in filing beyond the period of limitations set by N.J.S.A. 2A:14-2 because he did not have permanent injury and did not attain the $200 medical expense threshold required by N.J.S.A. 39:6A-8 until some time after the accident, but within two years of the filing date. Plaintiff contends that he relied upon the decision of the Law Division in Montag v. Bergen Bluestone Co., 145 N.J. Super. 140 (Law Div. 1976), which held that in a soft tissue injury case an injured person's right of action does not accrue until the injured person attains the required monetary plateau of $200 in medical expense or at such time as the injured person reasonably should know he will incur $200 in such expenses. The matter comes to us on appeal by plaintiff from an order granting summary judgment to defendants on the basis of this court's holding in Cappadona v. Eckelmann, 159 N.J. Super. 352 (App.Div. 1978), a case decided after plaintiff filed his complaint but which clearly overruled the lower court holding in Montag upon which plaintiff relied. The Cappadona ruling applies the usual two-year period of limitation to both permanent and nonpermanent injury.
*303 Plaintiff urges upon us two grounds for reversal. First, he asserts that Cappadona did not overrule Montag. This is an assertion he does not attempt to bolster beyond the bald statement that it is so, and one we find totally lacking in merit. The true thrust of his appeal is that Cappadonna is a "change in decisional law" and equitably should not be applied retroactively "where there has been justifiable reliance on earlier decisions." We assume the use of the plural by plaintiff is inadvertent. The question actually posed is whether plaintiff is entitled to the relief sought where he relied on a single lower court opinion that took a view of the issue of accrual so questionable as to be disputed by a court of coordinate jurisdiction eight months later (35 days after the filing of the complaint herein), Rescigno v. Picnich, 151 N.J. Super. 587 (Law Div. 1977), and found to be in error by an appellate court some 18 months after its date of decision (almost one year after plaintiff's date of filing). We resolve the question in the negative.
Plaintiff contends that in Rescigno permanent injury was alleged and the court therein distinguished Montag on that basis. Although it is true that the Rescigno decision makes such a distinction, it is clear that the court in each case took a different view of whether a modification of the "discovery rule" should be applied to avoid the effect of the normal rules applying to the limiting period of N.J.S.A. 2A:14-2 in personal injury cases.
We note that the present case appears to be one alleging permanent injury. The complaint, filed over two years after the accident date, alleges that plaintiff "will suffer pain and anguish in the future" and "will be incapacitated in the future." The allegations, although vague, appear strong enough to resist a motion to dismiss for failure to state a permanent injury had one been made by defendants. Plaintiff nowhere asserts that his claim at trial would have been one for a nonpermanent injury. He classifies his medical reports as indicating a soft tissue injury, "whose duration was uncertain." The only medical report used below was that of Dr. Scoppetuolo, who apparently *304 treated plaintiff from April 1, 1975 to April 28, 1975. The report actually gives no prognosis. Plaintiff's answer to standard interrogatory number four, which inquired as to "injury or condition claimed to be permanent," gave a number of symptoms relative to back and neck injuries. The answer to interrogatory number three claimed back and neck injuries, "with radiculitis and myositis, traumatically." The affidavit of original counsel, filed in opposition to the motion for summary judgment, lacks an important element in the sense that it is silent as to whether he ever inquired of the treating physician as to whether or not there was any permanent injury. Had such inquiry been made, and a negative response elicited, a more concrete base for reliance upon the Montag principle might exist since on its face this case appears not to differ from the usual soft tissue injury case wherein, as a daily occurrence, permanent injury is asserted in our trial courts. In cases of permanent injury there is no requirement that a plaintiff have $200 in medical expense, N.J.S.A. 39:6A-8, and thus no need to rely on Montag.
We engage in this exposition to emphasize that in circumstances such as here presented, any such claim of reliance must be reasonably founded. The claim of nonpermanent injury should be based upon reasonable medical opinion and not, as here, on an assumption of such fact. This is apart from our decision which rejects reliance on a single lower court opinion as sufficient grounds for relief.
Generally, the overruling of a judicial decision is retrospective in nature. Arrow Builders Supply Corp. v. Hudson Terrace Apts., 16 N.J. 47, 49 (1954). In Darrow v. Hanover Tp., 58 N.J. 410, 412-413 (1971), which considered whether the rule abolishing interspousal immunity enunciated in Immer v. Risko, 56 N.J. 482 (1970), should be given only prospective effect, the court noted that the State and Federal Constitutions "are neutral on the question of retrospective and prospective application," and acknowledged that although the court has "the power to make our decisions solely prospective, our courts have generally followed *305 the traditional view that the overruling of a judicial decision is retrospective in nature." In Darrow the court held that Immer was to be applied prospectively because analysis of the line of decisions that dealt with the question of interspousal immunity rendered by our Supreme Court prior to Immer would have justified interested parties to rely upon the state of the law as it existed prior to Immer. Compare Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958) (abrogation of charitable immunity doctrine announced in Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958), applied retroactively because there was no justifiable reliance on the continuance of that immunity rule). Oxford Consumer Discount Co. v. Stefanelli, 104 N.J. Super. 512, 520 (App.Div. 1969), mod. 55 N.J. 489 (1970), was a case of first impression interpretation of a statute. Judge Conford there observed that although prospective application can also apply to a first-instance decision or one which clarifies a murky or uncertain area of law, the rule is so applied only where, "members of the public or public entities could be found to have previously and not unreasonably relied on a different conception of the state of the law." (Emphasis ours.)
It is clear from the foregoing cases that it is a part of our settled law that, ordinarily, retroactive effect is given to judicially declared changes in doctrinal case law and to cases interpretive of statutes, subject, however, to considerations of injustice caused by justifiable reliance upon prior decisions of a court of last resort. In such a case the change effected by the new approach will only be applied prospectively. In Lemon v. Kurtzman, 411 U.S. 192, 199, 93 S.Ct. 1463, 1468, 36 L.Ed.2d 151 (1972), the court spoke of a recognition "that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct." Mere reliance, however, without reasonable justification therefore cannot serve as a ground for applying the modern doctrine of prospectivity, even where the prior line of cases are those of appellate courts or those of last resort. For a practical application of this view, see Dalton v. St. Luke's Catholic Church, supra 27 N.J. at 25-27. *306 Compare Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), where a new interpretation of a period of limitations was confined to prospective application because a long line of decisions by the Court of Appeals for the Fifth Circuit supported the prior view of the law. The superseding legal doctrine was therefore deemed "quite unforseeable." Id. at 107, 92 S.Ct. at 355.
Here plaintiff placed his reliance upon a single Law Division decision, one of several factors declared in In re Kloppenberg, 82 N.J. Super. 117, 122 (App.Div. 1964), as insufficient basis for reliance. Counsel have cited no New Jersey case where the sole ground for alleged justifiable reliance was a single decision of an inferior court, and our research discloses none. In 21 C.J.S. § 194b at 330, the exception to the general rule of retroactivity which permits prospective effect is noted to be generally applicable "only where reliance was placed on a decision of a court of last resort, and not on a decision of an inferior court." In Board of Directors of Chicago Theological Sem. v. People, 189 Ill. 439, 59 N.E. 977 (Sup.Ct. 1901), aff'd 188 U.S. 662, 23 S.Ct. 386, 47 L.Ed. 641 (1903), the Illinois court held reliance upon a number of decisions in the county court of Cook County was not justifiable reliance. In a later case an intermediate court of the same state deemed it "logical" that the reliance exception should only apply to opinions by a court of last resort. Garcia v. Hynes-Howes Real Estate, Inc., 29 Ill. App.3d 479, 331 N.E.2d 634 (App.Ct. 1975). The logic of such a limitation of the reliance rule is not only implicit in the New Jersey cases but apparent in the very nature of the rule. A decision of an inferior court is not binding on a court of coordinate jurisdiction. Wolf v. Home Ins. Co., 100 N.J. Super. 27 (Law Div. 1968), aff'd 103 N.J. Super. 357 (App.Div. 1968). In this context it has been said that trial court precedent is not to be considered lightly, but in the absence of an appellate authority in New Jersey, a trial court is not obliged to follow it. Lackovic v. New England Paper Tube Co., Inc., 127 N.J. Super. 394, 398 (Law Div. 1974). A trial court decision cannot realistically be regarded as "vesting" (as plaintiff here *307 contends) any rights in plaintiff. When plaintiff rested on the decision in Montag he took a calculated risk. He cannot be said to have engaged in a step amounting to reasonable and justifiable reliance. The power of the Montag decision was only as strong as its ability to persuade the trial judge before whom the issue was next tested. The trial judge in Rescigno rejected, however gracefully, Montag's reasoning, and by the time plaintiff tested his reliance on Montag it had been overruled.
The judgment below is affirmed.